UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DAVID R. HURST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-235-HBG |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. David R. Hurst ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT** Plaintiff's motion and **DENY** the Commissioner's motion.

**I.  PROCEDURAL HISTORY**

Plaintiff previously received Supplemental Security Income Benefits as a child from September 2001 through September 2007 due to cerebral palsy with right side hemiplegia, cognitive deficits, a seizure disorder, and a vision issue, as Plaintiff's condition met Listing 111.07.

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

[Tr. 11]. However, Plaintiff's eligibility for benefits ceased in 2007 due to an increase in household income. [*Id.*].

On February 20, 2016, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of disability that began on January 25, 1998, his date of birth. [Tr. 11, 176–83]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 122–34]. A hearing was held on August 22, 2017. [Tr. 27–69]. On October 25, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 11–21]. The Appeals Council denied Plaintiff's request for review on May 1, 2018 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on June 13, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since February 20, 2016, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: cerebral palsy with mild right hemiparesis, seizure disorder, headaches, and cognitive function in the borderline range (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that he is precluded from climbing ladders, ropes, or scaffolds; is limited to occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; and is limited to frequent handling, fingering, and feeling with the right upper extremity. He should avoid moderate exposure to extreme cold and vibration. He should avoid concentrated exposure to wetness and humidity and to pulmonary irritants. He should avoid all exposure to work place hazards. He is unable to operate foot controls with the right lower extremity and is unable to perform commercial driving. He is able to perform simple tasks where changes in the work routine are infrequent.

5. The claimant was born on January 25, 1998, and was 18 years old, which is defined as a younger individual age 18–44, on the date the application was filed (20 CFR 416.963).

6. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

7. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

8. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

9. The claimant has not been under a disability, as defined in the Social Security Act, since February 20, 2016, the date the application was filed (20 CFR 416.920(g)).

[Tr. 13–20].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

4

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff contends that the ALJ failed to properly analyze whether he met Listing 11.07 or Listing 12.05, and that this failure was not harmless error. [Doc. 16 at 8–14]. Additionally, Plaintiff maintains that the ALJ's RFC determination is not supported by substantial evidence, as the ALJ failed to properly weigh the opinions of Plaintiff's treating neurologist, Christopher Miller, M.D., and treating pediatrician, Jill Newsome, M.D. [*Id.* at 14–18]. The Court will address Plaintiff's specific allegations of error in turn.

### A. Step Three Determination

Plaintiff alleges that the ALJ erred in finding that he did not have an impairment or combination of impairments that met or equaled the severity of a Listed Impairment. Plaintiff claims that substantial evidence establishes that he met the requirements of Listing 11.07, and the ALJ failed to appropriately evaluate whether he met this Listing. Further, Plaintiff asserts that substantial evidence supports a finding that he met Listing 12.05.

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001). The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the

claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529. Only when an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing level severity. 20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with comparing the medical evidence of record with a Listing's requirements. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). However, the Sixth Circuit rejected "a heighted articulation standard" with regard to the ALJ's step three finding. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical evidence "almost establishes a disability"). The Court will address Plaintiff's arguments with respect to the Listings 11.07 and 12.5.

### 1. Listing 11.07

Plaintiff contends that substantial evidence establishes that he met the requirements of Listing 11.07 under both subpart A and B. Plaintiff points to medical evidence which he asserts demonstrates that he met the Listing, in addition to claiming that "the ALJ's failure to articulate the specific evidence she considered" constitutes a basis for remand. [Doc. 16 at 14]. The Commissioner asserts that the medical record establishes that Plaintiff did not meet the requirements of the Listing. [Doc. 19 at 11–16].

7

The applicable version of Listing 11.07 in place at the time of the ALJ's decision provides that:

> Listing 11.07: Cerebral palsy, characterized by A, B, or C:
>
> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
> > 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> > 2. Interacting with others (see 11.00G3b(ii)); or
> > 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> > 4. Adapting or managing oneself (see 11.00G3b(iv)); or
>
> C. Significant interference in communication due to speech, hearing, or visual deficit (see 11.00E2).

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.07 (Effective August 22, 2017 to March 13, 2018).[2]

In the disability decision, the ALJ solely stated that "[r]ecords show the claimant has not had a seizure since 2003," and that "[h]e has mild right hemiparesis but he plays ping-pong and basketball." [Tr. 14]. Therefore, the ALJ found that Plaintiff's impairments did "not meet listing

---

[2] The criteria in the Listing of Impairments used to evaluate disability claims involving neurological disorders were comprehensively revised on July 1, 2016, with the new regulations effective September 29, 2016—before the ALJ's October 25, 2017 decision. *See Revised Medical Criteria for Evaluating Neurological Disorders*, 81 Fed. Reg. 43048, 2016 WL 3551949 (July 1, 2016); *see, e.g.*, *Rodway v. Comm'r of Soc. Sec.*, No. 1:18CV0169, 2019 WL 540871, at *9 (N.D. Ohio Jan. 24, 2019), *report and recommendation adopted by*, 2019 WL 527782 (N.D. Ohio Feb. 11, 2019). The SSA subsequently corrected an inadvertent omission on August 22, 2017. 82 Fed. Reg. 39664-01, 2017 WL 3589390 (August 22, 2017).

11.00." [*Id.*].

"It will not be sufficient, however, for the ALJ merely to state in a conclusory fashion that the proof offered by the claimant does not meet or medically equal the criteria of a listed impairment without analysis or any citation or discussion of the evidence and conflicts in the evidence that relate to the listed impairment at issue." *Crayton v. Comm'r of Soc. Sec.*, No. 3:17-CV-675-DW, 2018 WL 3370565, at *7 (W.D. Ky. July 10, 2018) (citing *Evans ex rel. DCB v. Comm'r of Soc. Sec.*, No. 11-CV-11862, 2012 WL 3112415, at *8–11 (E.D. Mich. Mar. 21, 2012), *report and recommendation adopted by*, 2012 WL 3112316 (E.D. Mich. July 31, 2012)). Here, the ALJ failed to address the specific requirements of Listing 11.07, and merely stated that Plaintiff no longer had seizures and was able to play ping-pong and basketball. The ALJ did not explicitly assess Plaintiff's mental and physical functioning in the context of the requirements of Listing 11.07. Therefore, in her Step Three analysis, the ALJ did not provide adequate reasoning to facilitate meaningful review by the Court. *See Reynolds v. Comm'r Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) ("In short, the ALJ needed to actually evaluate the evidence, compare it to [ ] the Listing, and give an explained conclusion, in order to facilitate meaningful review.").

However, "[t]he Sixth Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 13-cv-180, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted by*, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014)); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (per curiam) (rejecting argument that the ALJ erred by not making specific findings at step three because the ALJ's conclusion was supported by substantial evidence in the record). In *Forrest*, the Sixth Circuit upheld the ALJ's conclusory

9

finding at step three for two reasons: (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three; and (2) even if the ALJ's factual findings failed to support his step three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments. 591 F. App'x at 366.

Plaintiff contends that he met the requirements for Listing 11.07 under both 11.07(A) and 11.07(B). With respect to the first requirement of Listing 11.07(A), disorganization of motor function in two extremities, Plaintiff cites to treatment records from Dr. Miller and Dr. Newsome which he claims establishes that his cerebral palsy affects his right side, including his right upper and lower extremities. [Doc. 16 at 11]. Further, Plaintiff testified at the hearing that his right foot causes issues with walking and balancing. [Tr. 40–41]. Plaintiff also claims that he has difficulties performing tasks with his right hand [Tr. 45–46], and that "[o]ther than notes from Plaintiff's treating psychiatrist, who does not see or evaluate Plaintiff for his cerebral palsy or any other physical ailment, there is no evidence in the record to contradict Plaintiff's assertion that he has motor dysfunction both [in] his right upper extremity and left lower extremity." [Doc. 16 at 12].

Under the second requirement of Listing 11.07(A), Plaintiff claims that he meets "both the balance and use of upper extremities requirements." [*Id.*]. Plaintiff cites to the opinion of Dr. Newsome, which stated that Plaintiff's hemiparesis "limits his ability to balance and squat, or raise from kneeling position." [Tr. 551]. Dr. Newsome also opined that Plaintiff was unable to climb ladders or scaffolds, balance, stoop, kneel crouch, or crawl. [*Id.*]. Plaintiff points to the opinion of his treating neurologist, Dr. Miller, who opined that Plaintiff would only be able to use his right upper extremities for twenty percent of an eight-hour work day due to significant limitations with reaching, handling, or fingering. [Tr. 577].

Plaintiff also claims that substantial evidence establishes that he met the criteria under Listing 11.07(B). Plaintiff again points to his hemiparesis on the right side, which affects his right upper and lower extremities. Plaintiff asserts that although he attempts to perform several daily activities, he is severely impaired due to his cerebral palsy. Further, Plaintiff submits that the opinion of consultative examiner, Dr. Candice Blake, establishes that he was markedly limited in his memory and understanding, as well as overall adaption [Tr. 542], and "[t]here is no indication in the record that Dr. Blake suggested Plaintiff to be malingering and not giving his best efforts during the evaluation (as is seemingly inferred by the ALJ in her decision)" [Doc. 16 at 13].

The Commissioner asserts that the medical record does not establish disorganization of Plaintiff's motor function in two extremities under Listing 11.07(A), or a marked limitation in physical functioning under Listing 11.07(B). Under Listing 11.07(A), the Commissioner points to Plaintiff's "mild hemiplegia" and cites to a July 5, 2016 treatment note with Dr. Miller which demonstrates "no motor dysfunction." [Doc. 19 at 12]; *see* [Tr. 557–58]. Additionally, the Commissioner submits that the medical record establishes a "lack of evidence that Plaintff had an extreme limitation in the ability to stand from a seated position, or had an extreme limitation in balance or use of the upper extremities." [Doc. 19 at 12]. The Commissioner asserts Plaintiff was able to drive by himself without any indication in the record that he had any difficulty rising from car or truck seats, as well as that his gait and balance were routinely observed to be normal or minimally impacted. [*Id.*]; *see* [Tr. 351, 355–60, 368, 558, 605, 622]. Additionally, the Commissioner notes that Dr. Miller indicated only slight difficulties with Plaintiff's balance [Tr. 576], and that Plaintiff was able to carry groceries and help his stepfather with an asphalt hose [Tr. 33–36].

11

The Commissioner also alleges that Plaintiff's mild symptoms do not establish the marked limitations in physical function under Listing 11.07(B). The Commissioner cites to records from Plaintiff's treating psychiatrist, Nadine Turner, M.D., as well as Charles Moore, M.D., who recommended that Plaintiff stay active to maintain his health. [Doc. 19 at 13]; *see* [Tr. 351, 619]. Additionally, the Commissioner asserts that Plaintiff's physical activities, including playing basketball, driving, swimming, and going to the mountains, are inconsistent with the marked limitations. [Doc. 19 at 13]. The Commissioner also cites to Dr. Newsome's opinion that Plaintiff could occasionally lift up to fifty pounds, and that he could stand for four hours and walk for two hours total in an eight-hour workday. [Tr. 549]. Additionally, the Commissioner notes that Dr. Miller found that Plaintiff could walk for a block without pain and walk on rough or uneven ground, as well as that he did not indicate that Plaintiff had any limitations in sitting, standing, or walking. [Tr. 576–77]. Further, the Commissioner claims that Plaintiff relies on Dr. Blake's one-time examination, and "overlooks the evidence that Plaintiff was well-groomed and well-liked by his peers, had and used his driver's license, and had graduated high school." [Doc. 19 at 15]; *see* [Tr. 14, 32–33, 232, 237, 351]. Lastly, the Commissioner cites to Dr. Trainer's progress note that Plaintiff was "very independent in all areas." [Tr. 351].

Here, the Commissioner cites to evidence that he claims establishes that Plaintiff did not satisfy the criteria of Listing 11.07. However, the Commissioner largely fails to cite to findings by the ALJ or discussion in the disability decision regarding Plaintiff's functional limitations under the criteria of the applicable Listing. *See Russell v. Comm'r of Soc. Sec.*, No. 2:15-cv-407, 2016 WL 1103897, at *6 (S.D. Ohio Mar. 22, 2016) ("Although the Commissioner argues that the ALJ's determination should be upheld because the record evidence elsewhere does not establish that Russell's impairment[s] satisfied the criteria for Listing 12.05C, 'the ALJ included no such

analysis in the decision,' and this Court "cannot engage in post hoc rationalizations.'") (internal citations omitted); *Bluer v. Comm'r of Soc. Sec.*, No. 1:13-cv-22, 2014 WL 700424, at *6 (W.D. Mich. Feb. 24, 2014) ("Defendant's brief contains the type of evaluation [including addressing the ability to ambulate effectively] which the ALJ should have provided in his decision and seeks to have this Court affirm the ALJ's decision based upon an analysis which the ALJ did not perform. In short, defendant seeks to have this court perform a *de novo* review of the administrative record to determine whether plaintiff meets the requirements of Listing 1.02."). "Without the ALJ actually evaluating the evidence, comparing it to the criteria of the affected listing and providing an explained conclusion, meaningful judicial review cannot occur and it becomes 'impossible to say that the ALJ's decisions at Step Three was supported by substantial evidence.'" *See Crayton v. Comm'r of Soc. Sec.*, No. 3:17-CV-675-DW, 2018 WL 3370565, at *8 (W.D. Ky. July 10, 2018) (citing *Miaun v. Colvin*, No. 3:14-CV-222-TAV-HBG, 2015 WL 2248750, at *11 (E.D. Tenn. May 12, 2015)).

The ALJ's failure to discuss the specific requirements of Listing 11.07 is further compounded by Plaintiff's representative stating during the disability hearing that Plaintiff intended to "rely on the cerebral palsy Listings 11.07." [Tr. 32]; *see, e.g.*, *Capizzi v. Colvin*, No. 2:14-CV-1063, 2015 WL 5117698, at *4 (S.D. Ohio Sept. 1, 2015) ("Because the Plaintiff stated from the outset of the hearing that he may have equaled Listing 1.04C, the ALJ should have articulated why his impairments did not equal the Listing."); *Swint v. Comm'r of Soc. Sec.*, No. 1:13cv582, 2014 WL 4426246, at *3–5 (S.D. Ohio Sept. 8, 2014) (finding that where plaintiff's counsel contended in opening argument that the plaintiff equaled a specific listing, and the ALJ failed to address whether that listing was in fact equaled, remand was appropriate); *see also Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) ("If, however, the record 'raise[s]

13

a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing.") (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

The Commissioner also asserts that the ALJ's discussion of Plaintiff's impairments during Step Three was sufficient to establish that he did not meet Listing 11.07. The Commissioner notes that the "ALJ first noted Plaintiff's seizure free status, which is incompatible with meeting the epilepsy listing," as well as that the ALJ noted that Plaintiff's hemiparesis was mild, which "is inconsistent with listing-level severity." [Doc. 19 at 15]; *see* [Tr. 14]. Further, the Commissioner asserts that there is substantial support for the ALJ's finding throughout the opinion, as the ALJ noted Plaintiff's daily activities, including the ability to drive, play basketball and ping pong, use a cell phone, earn a high school diploma, accompany his stepfather at work, and play video games. [Tr. 14, 16]. Additionally, the ALJ noted that Plaintiff was seizure free, and only suffered from occasional headaches. [Tr. 17]. Lastly, the ALJ cited to treatment notes from Plaintiff's "treating psychiatrist," that Plaintiff walked without a foot drop or gait deviation, that he had a full range of motion, and no length discrepancy despite mild right hemiparesis. [Doc. 19 at 16]; *see* [Tr. 18].

Although the Commissioner claims that evidence in the medical record supports a finding that Plaintiff's mild limitations did not satisfy Listing 11.07, the Court finds that Plaintiff has set forth evidence alleging that he could potentially meet the requirements of the Listing, and thus, the Court cannot engage in a *de novo* review. *See Miaun v. Colvin*, No. 3:14-CV-222-TAV-HBG, 2015 WL 2248750, at *12 (E.D. Tenn. May 12, 2015) ("Without identifying the listed impairments the ALJ considered and providing a sufficient analysis as to why Plaintiff's [severe impairments] does or does not satisfy [the Listing], the Court's hands are tied and consideration can go no further."); *Fury v. Comm'r of Soc. Sec.*, No. 5:11-CV-1660, 2012 WL 4475661, at *3 (N.D. Ohio Sept. 26, 2012) (finding that "to apply the facts of this case to [the Listings] for the *first time* and

conclude that it does not apply [ ] would be a de novo review. As such, this Court is constrained from considering the argument"). Plaintiff cites to opinions from his treating pediatrician and neurologist detailing severe limitations in his right upper and lower extremities. Further, the ALJ failed to detail how Plaintiff's daily activities did not support listing-level equivalency, such as the ability to play ping-pong and basketball. Ultimately, the ALJ failed to discuss Listing 11.07 relating to cerebral palsy at any point in the disability decision. The Court also agrees with Plaintiff that the ALJ's discussion of the treatment records of Plaintiff's treating psychiatrist are not convincing evidence of Plaintiff's functional physical limitations.

Ultimately, the ALJ failed to consider Plaintiff's severe impairments or make specific findings in the context of the Listing requirements. *See, e.g.*, *Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *6 (6th Cir. Mar. 6, 2017) ("The district court should not have speculated what the ALJ may have concluded had he considered the medical evidence under the criteria in Listing 1.02."); *Miaun*, 2015 WL 2248750, at *10 ("The ALJ did not specify what Listings she considered regarding Plaintiff's physical impairments and did not apply any of the 11.02 criteria to his seizure disorder."); *Weisgarber v. Colvin*, No. 3:13–CV–426–TAV–CCS, 2014 WL 3052488, at *5 (E.D. Tenn. July 3, 2014) ("Due to the lack of comparison between a specific listing, particularly Listing 112.03, and any corresponding evidence, the Court is unable to conclude that the ALJ's step three finding is supported by substantial evidence.").

Therefore, the Court finds that "[t]his is not a case where the record is devoid of any evidence which could support a finding" that Plaintiff equals Listing 11.07, and the record "raises 'a substantial question' as to whether" Plaintiff equals the Listing. *Scott v. Comm'r of Soc. Sec.*, No. 16-11922, 2017 WL 2837150, at *10 (E.D. Mich. May 23, 2017) (citing *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)), *report and recommendation adopted by*, 2017

WL 2857494 (E.D. Mich. June 29, 2017). Plaintiff "attempts to place the Court in the role of the physician," but the Court finds that the ALJ's failure to analyze the medical record under the Listing 11.07 requirements or appropriately discuss the applicable criteria precludes meaningful review. *Id.*; *see also M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858 (E.D. Mich. 2012) ("As is plain from the quoted passage, the ALJ did not cite, discuss, or resolve any conflicts in the evidence in concluding that Plaintiff's mental impairment did not meet or medically equal a Listing.").

Next, the ALJ's failure to appropriately review whether Plaintiff met Listing 11.07 was not harmless, as "the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)(iii)). Only where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had a made the required findings, the ALJ would have found the claimant not disabled" will the failure of the ALJ to consider a particular Listing and its criteria at Step 3 be held harmless. *See Jaeger v. Comm'r of Soc. Sec.*, No. CV 16-14447, 2017 WL 4936023 at *4 (E.D. Mich. Oct. 5, 2017) (quoting *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858–59 (E.D. Mich. 2012)), *report and recommendation adopted by*, 2017 WL 4918575 (E.D. Mich. Oct. 31, 2017).

Further, "[t]his case more closely resembles *Reynolds* than *Forrest*" because Plaintiff "presented arguments that [ ]he met or equaled" the requirements of the Listing at issue. *Oldenkamp v. Comm'r of Soc. Sec.*, No. 1:13-CV-1303, 2015 WL 505805, at *5 n.2 (W.D. Mich. Feb. 6, 2015). "In *Forrest*, the Sixth Circuit noted a factor in finding that the ALJ's error was harmless was that 'Forrest did not argue before that ALJ that his impairments met or medically

16

equaled in severity a specific listing.'" *Id.* (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364 (6th Cir. 2014)).

Therefore, as the ALJ has committed an error of law by failing to analyze Plaintiff's severe impairments under the applicable Listing, "the [C]ourt must reverse and remand, 'even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.'" *Reynolds*, 424 F. App'x at 414 (quoting *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011)).

Accordingly, the Court finds that Plaintiff's case should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) to re-evaluate whether Plaintiff meets the requirements of Listing 11.07. Overall, in order to facilitate meaningful review, the ALJ should identify the applicable listed impairments and consider the record as a whole in determining whether Plaintiff satisfied the requisite listing criteria.

### 2. Listing 12.05

Plaintiff also claims that substantial evidence supports a finding that he met Listing 12.05. [Doc. 16 at 9]. The Commissioner asserts that substantial evidence supports the ALJ's step three determination that Plaintiff did not meet or medically equal Listing 12.05. [Doc. 19 at 16–18].

Both parties have identified the applicable Listing at the time of the ALJ's decision as requiring:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, subpt. P., appx. 1 § 12.05.

In support of this claim, Plaintiff point to the "modifications to general curriculum" [Tr. 315] required to obtain his high school diploma, as well as his full-scale IQ of 62 result from his consultative examination with Dr. Blake [Tr. 541]. Therefore, Plaintiff submits that "[t]he results of this testing, coupled with the notes throughout his educational records, clearly show that Plaintiff meets prong one of the listing in that he does have significantly subaverage general intellectual functioning in his cognitive ability." [Doc. 16 at 9]. Further, Plaintiff claims that the medical record establishes significant deficits in adaptive functioning, which "has led to Plaintiff's mother being required to assist with his daily activities and personal needs." [*Id.*]. Plaintiff also points to Dr. Blake's opinion that Plaintiff's ability for overall adaption was "markedly limited." [Tr. 542].

The Commissioner asserts that as Plaintiff was able to participate in IQ testing three times, the record does not demonstrate "an inability to function at a level that is required for participation in standardized testing of intellectual functioning," thus establishing that Plaintiff cannot meet the first requirement of Listing 12.05. [Doc. 19 at 17]. Further, the Commissioner alleges that the ALJ appropriately considered Plaintiff's activities of daily living to determine that Plaintiff did not meet Listing 12.05.

Although the Court has already found that Plaintiff's case will be remanded for the ALJ to re-evaluate the applicable Listings, the Court has reviewed the parties' arguments and finds that the ALJ properly determined that Plaintiff did not meet Listing 12.05. The ALJ appropriately found that Plaintiff was able to participate in standardized testing of intellectual functioning, and noted inconsistencies between Plaintiff's IQ score from Dr. Blake with his previous testing and daily activities. "However, to the extent [that] the ALJ's analysis of the record on remand leads

to factual findings that would materially alter" the ALJ's analysis of Listing 12.05, "the ALJ should alter that analysis accordingly." *See Dodson v. Colvin*, No. 3:15CV0497, 2016 WL 541471, at *17 (N.D. Ohio Feb. 11, 2016).

### B. RFC Determination

Plaintiff also claims that the ALJ's RFC determination is not supported by substantial evidence, as the ALJ failed to properly weigh the opinions of Plaintiff's treating neurologist, Dr. Miller, and treating pediatrician, Dr. Newsome. [Doc. 16 at 14–18]. Specifically, Plaintiff alleges that this failure is not harmless error because he "has limitations in using his right upper extremity as it is affected by cerebral palsy," as well as "limitations in his ability to balance, stoop, crouch, and crawl." [*Id.* at 19].

However, as the Court has already determined that a remand is necessary for the ALJ to re-evaluate whether Plaintiff met or medically equaled Listing 11.07, in the interest of judicial economy, the Court declines to address Plaintiff's claim that the ALJ's RFC determination is not supported by substantial evidence. On remand, the ALJ should appropriately weigh the opinions of Dr. Miller and Dr. Newsome in accordance with the treating physician rule, and if their opinions are not assigned controlling weight, specifically state good reasons for the weight assigned to the opinions. Further, the ALJ should consider Plaintiff's arguments regarding the limitations not included in the original RFC determination.

### V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 15**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to re-evaluate whether Plaintiff meets the requirements of Listing 11.07. Overall, in order to facilitate meaningful review,

the ALJ should identify the applicable listed impairments and consider the record as a whole in determining whether Plaintiff satisfied the requisite Listing criteria.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge